## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**SEAN JEFFREY THOMPSON**                    *

       Plaintiff,                    *

v.                    *                    Civil Action No.:  **WDQ 1:02-CV-1989**

**DETECTIVE STEPHEN MARTIN**,                    *

and                    *

**OFFICERS JOHN DOE 1-10**                    *
c/o The Baltimore City Police Department
601 E. Fayette Street                    *
Baltimore, Maryland  21202
                    *
and                    *

**THE BALTIMORE CITY POLICE**                    *
**DEPARTMENT**
601 E. Fayette Street                    *
Baltimore, Maryland  21202
                    *
Serve:                    *
Kevin Clark
Commissioner                    *
The Baltimore City Police Department
601 E. Fayette Street                    *
Baltimore, Maryland  21202
                    *
       Defendants.
                    *
*   *   *   *   *   *   *   *   *   *   *   *   *

## FIRST AMENDED COMPLAINT
## <u>AND DEMAND FOR JURY TRIAL</u>

Plaintiff, Sean Jeffrey Thompson ("Thompson" or "Plaintiff"), by his undersigned

attorneys, hereby sues Detective Stephen Martin, certain unnamed and presently unknown

officers of the Baltimore City Police Department, and the Baltimore City Police Department, and in connection therewith states:

### Introduction

1.   This action asserts claims of assault, battery, and deprivation of constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiff seeks compensable and punitive damages for injuries sustained as a result of actions committed by Defendants under color of law.

### Jurisdiction

2.   This is a civil action pursuant to 42 U.S.C. § 1983 seeking redress from Defendants' actions, under color of law, in violation of Thompson's the rights guaranteed by the Constitution of the United States.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201, as well as through its pendent and ancillary jurisdiction.

### Parties

3.    Thompson, prisoner number 312-821, is a Maryland resident, and is currently incarcerated at Maryland Correctional Institute – Jessup, Jessup, MD 20794.

4.    Defendant, Stephen Martin, is a detective with the Baltimore City Police Department and resides in Maryland.

5.    Defendants John Doe 1 – 10 are or were at the time of the incidents described herein officers of the Baltimore City Police Department and that were aware of and failed to intercede in Defendant Martin's violation of Plaintiff's constitutional rights, and/or who denied Thompson necessary medical treatment in further violation of his constitutional rights.

6.    Defendant Baltimore City Police Department is a public entity established under the laws of Maryland that may be sued in its own name.

## Facts

7.       On or about March 28, 2002, at approximately 10 p.m., Thompson was arrested by officers of the Baltimore City Police Department and transported to the Department's Southwest District office where he was initially placed in a holding cell.

8.       At some time between approximately 11 p.m., March 28, 2002, and 12 a.m., March 29, 2002, Thompson was removed from the holding cell and was transferred to an interrogation room, where his right wrist was handcuffed to a table.

9.       Defendant Martin, in his capacity as a Baltimore City Police Officer, entered the interrogation room and interrogated Thompson concerning an alleged crime. During this interrogation Martin and Thompson were the only individuals in the interrogation room. However, the door to the room remained open and, upon information and belief, other Officers of the Baltimore City Police Department could hear and were aware of the events that transpired in the interrogation room.

10.       During the interrogation process Detective Martin expressed his personal contempt for Thompson, calling him on at least one occasion a "lying piece of shit."

11.       After finishing his interrogation, Defendant Martin unlocked the handcuff from the table and instructed Thompson to stand and place his hands on the wall. Thompson complied with that instruction without hesitation or complaint.

12.       Defendant Martin then placed Plaintiff Thompson's hands behind his back and handcuffed Thompson's hands together.

13.       While Thompson's hands were handcuffed behind his back, Defendant Martin began taunting Thompson with statements of "you think you're tough" and the like. Then Detective Martin struck Thompson in the head with his fist three times. Defendant Martin's

battery of Thompson in this respect was intentional, clearly excessive, objectively unreasonable, entirely unnecessary and the product of his ill will and malice toward Thompson.

14.     Thompson protested Defendant Martin's use of force.   Martin kicked Thompson's legs from under him, causing Thompson to fall to the floor.  Defendant Martin's battery of Thompson in this respect was intentional, clearly excessive, objectively unreasonable, entirely unnecessary and the product of his ill will and malice toward Thompson.

15.     While Thompson lay on the floor of the interrogation room in a fetal position, with his hands cuffed behind his back, Defendant Martin kicked Thompson's back.  Defendant Martin's battery of Thompson in this respect was intentional, clearly excessive, objectively unreasonable, entirely unnecessary and the product of his ill will and malice toward Thompson.

16.     Thompson was naturally in a state of apprehension and fear that Detective Martin would continue his physical abuse of Thompson and cause him to suffer bodily harm and possibly death.

17.     While Thompson was lying on the floor and suffering physical abuse at the hands of Defendant Martin, Detective Martin continued to verbally abuse Thompson.

18.     Defendant Martin grabbed Plaintiff Thompson's left foot, and violently and intentionally twisted Thompson's left ankle.

19.     Detective Martin adjusted Thompson's handcuffs, and taunted Thompson about his injuries, saying "you're not so tough are you?" and the like.

20.     Defendant Martin then left the interrogation room.  As he did, he closed the door, which had remained open throughout the events described above.  Given the nature of the events and the noise generated thereby, there is no question but that other Officers of the Baltimore City

Police Department could hear and were aware of the events that transpired in the interrogation room.

21.    Thompson was left lying on the floor of the interrogation room alone for over one hour without medical assistance.  Then Thompson got up and sat down at the table.

22.    After approximately one hour, Defendant Martin returned, handcuffed Thompson to the table, and attempted to further interrogate him.

23.    Plaintiff Thompson was then escorted out of the interrogation room to a police vehicle for transport to Central Booking by approximately five unnamed police officers.  During the walk from the interrogation room to the police vehicle, Plaintiff Thompson experienced significant discomfort in his ankle, which was manifested by obvious limping on his part.  He also had obvious difficulty in entering and exiting the vehicle.  Despite his obvious injuries, none of the police officers took any action to obtain medical assistance for Thompson.

24.    After being transported by police vehicle to Central Booking in Baltimore City, Plaintiff Thompson was escorted by a single officer from the vehicle to the Central Booking facilities.

25.    While at Central Booking, Thompson was forced by the officers to remain standing despite his obvious injuries, pain, suffering and need for immediate medical treatment.  During processing, Plaintiff Thompson became overcome with the pain from his injuries and lost consciousness in the presence of the officers and Central Booking personnel.

26.    Only after Thompson lost consciousness at Central Booking, was he transported to Mercy Medical Center (Mercy) in Baltimore City to receive medical attention for his injuries.  X-rays of  Thompson's ankle demonstrated that it was "severely sprained almost to the point of fracture." Plaintiff Thompson's ankle was placed in a half cast, and Plaintiff Thompson was

issued crutches to facilitate his movement. During the period of time from April 2002 to September 2002, Plaintiff Thompson was housed on the medical tier of the correctional facility.

### Count I
**(Violation of 42 U.S.C. § 1983: Deprivation of Constitutional Rights by Martin and John Doe 1 - 10)**

27.    The Plaintiff adopts and incorporates all statements in paragraphs 1 through 26 above.

28.    At all times relevant to the events described above, Defendant Martin, and the officers that witnessed or were otherwise aware of Martin's actions but whom failed to intercede in them, and the officers, who like Martin, were aware of Thompson's need but denied him access to medical attention, acted under color and pretense of law, and under color of statutes, customs and usages of the State of Maryland.

29.    As a result of Defendant Martin's actions and those of the other officers, identified at present as John Doe 1 - 10, Thompson was deprived of his constitutional rights under the Fifth and Fourteenth amendments and 42 U.S.C. § 1983.

30.    Defendant Martin's use of force, the other officers' failure to intercede to prevent that use of force, and their collective failure to provide Thompson with necessary medical attention were all without justification and demonstrated ill will, improper motivation or evil purpose.

31.    As a result of Defendant Martin's conduct and that of officers John Doe 1 -10, Plaintiff Thompson suffered substantial damages, including, but not limited to, extreme and temporary and permanent pain and suffering, temporary and permanent and debilitating injury to his ankle, humiliation, and mental distress.

WHEREFORE, as to Count I, Thompson demands that judgment be entered in his favor and against Detective Martin and John Doe 1 – 10, jointly and severally, in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages, together with reasonable attorneys' fees and costs of suit, as well as any additional relief that justice may require.

<u>**Count II**</u>
**(Violation of 42 U.S.C. § 1983: Deprivation of Constitutional Rights by**
**The Baltimore City Police Department)**

32.     The Plaintiff adopts and incorporates paragraphs 1 through 31 above.

33.     Upon information and belief, the Baltimore City Police Department was aware of the propensity on the part of Detective Martin and other police officers, including John Doe 1 – 10, to violate the constitutional rights of detainees as they have done in Thompson's case, and taking no action to prevent it, and/or through gross negligence in its supervision of its officers, has created a custom or policy that fosters such unconstitutional conduct.

34.     As a result of the Baltimore City Police Department's actions in creating a custom or policy that fosters the type of conduct engaged in by Defendant Martin and John Doe 1-10, and its gross negligence in supervising its officers, Thompson suffered the violation of his constitutional rights.

WHEREFORE, as to Count II, Thompson demands that judgment be entered in his favor and against the Baltimore City Police Department in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages, together with reasonable attorneys' fees and costs of suit, as well as any additional relief that justice may require.

## Count III
### (Battery by Detective Martin as Employee of Baltimore City Police Department)

35.    The Plaintiff adopts and incorporates all statements in paragraphs 1 through 34 above.

36.    On or about March 29, 2002, Defendant Martin's conduct resulted in an intentional and harmful touching of Plaintiff Thompson.   Martin's conduct was undertaken deliberately and with actual malice.

37.    At all times during these events, Defendant Martin was employed by Defendants as a Baltimore City Police Officer.

38.    Defendant Martin's use of force was without justification and demonstrated ill will, improper motivation or evil purpose.

39.    As a result of Defendant Martin's conduct, Plaintiff Thompson suffered substantial damages, including, but not limited to, extreme and permanent pain and suffering, permanent and debilitating injury to his ankle, humiliation, and mental distress.

40.    Defendant Baltimore City Police Department is liable under the doctrine of respondeat superior for the damages caused by Detective Martin.

WHEREFORE, as to Count III, Thompson demands that judgment be entered in his favor and against Detective Martin and the Baltimore City Police Department, jointly and severally, in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages, together with reasonable attorneys' fees and costs of suit, as well as any additional relief that justice may require.

## Count IV
### (Assault by Detective Martin as Employee of Baltimore City Police Department)

41.    The Plaintiff adopts and incorporates paragraphs 1 through 40 above.

42.    As a result of Defendant Martin attempting to kick Plaintiff in the interrogation room, Plaintiff Thompson was placed in apprehension of an imminent bodily harm.

43.    Defendant Martin acted with the intent and capability to do bodily harm to Plaintiff Thompson.  His conduct was perpetrated with actual malice.

44.    Defendant Martin's use of force was without justification and demonstrated ill will, improper motivation or evil purpose.

45.    As a result of Defendant Martin's conduct and actions, Plaintiff Thompson suffered and will continue to suffer severe mental anguish.

46.    Defendant Baltimore City Police Department is liable under the doctrine of respondeat superior for the damages caused by Detective Martin.

WHEREFORE, as to Count III, Thompson demands that judgment be entered in his favor and against Detective Martin and the Baltimore City Police Department, jointly and severally, in the amount of Five Hundred Thousand Dollars ($500,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages, together with reasonable attorneys' fees and costs of suit, as well as any additional relief that justice may require.

### <u>Jury Demand</u>

Plaintiff, by and through his attorney, Robert S. Brennen, demands trial by jury of all issues triable by jury.


Dated: 7/21/03                                    _____/s/_____

                                                 Robert S. Brennen (04499)
                                                 MILES & STOCKBRIDGE P.C.
                                                 10 Light Street
                                                 Baltimore, Maryland 21202
                                                 (410) 385-3653
                                                 Attorneys for Plaintiff, Sean Jeffrey Thompson

::ODMA\PCDOCS\BALT01\721170\1