IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
– Northern Division –

| | | |
|---|---|---|
| SEAN JEFFREY THOMSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: WDQ 1:02-CV-1989 |
| | * | |
| DETECTIVE STEPHEN MARTIN, | * | |
| OFFICERS JOHN DOE 1-10, and | * | |
| THE BALTIMORE CITY | * | |
| POLICE DEPARTMENT, | * | |
| | * | |
| Defendants. | * | |

## MOTION FOR NEW TRIAL

Plaintiff, Sean Jeffrey Thompson ("Plaintiff"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 59, hereby moves for a new trial in the above-captioned matter. In support thereof, Plaintiff states as follows:

1. Plaintiff moves for a new trial for two separate and independent reasons. First, the Court erred when it refused to read Plaintiff's requested Jury Instruction Nos. 17 ("Party's Failure to Produce Evidence") and 18 ("Spoliation of Evidence") to the jury. Second, the Court erred when it denied Plaintiff's motion in limine with respect to evidence regarding Plaintiff's March 2002 arrest and subsequent conviction.

2. Plaintiff was entitled to have Instructions Nos. 17 and 18 read to the jury under the law of this Court and based upon the facts adduced at trial. The Court abused its discretion in failing to give either an adverse inference instruction or (at a minimum) a missing document instruction in this case given Defendants' spoliation of the Explanation of Rights form that was used during Defendants' interrogation of Plaintiff.

3. Three factors must be satisfied in order to warrant an adverse inference instruction for spoliation of evidence: "(i) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (ii) the destruction or loss was accompanied by a 'culpable' state of mind; and (iii) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Thompson, et al. v. U.S. Dep't of Housing and Urban Development, et al.*, 219 F.R.D. 93 (D. Md. 2003)(citing *Residential Funding v. Degeorge Financial Corp.*, 306 F.3d 99, 107-08 (2nd Cir. 2002)).

4. The evidence offered at trial, by both Plaintiff and Defendants, demonstrated that the Explanation of Rights form is used during the interrogation of virtually every criminal suspect. The parties further agreed that an Explanation of Rights form was used during Detective Martin's interrogation of Plaintiff.

5. There was no legitimate dispute at trial that Detective Martin and the Police Department, as custodian of such records, had control over the Explanation of Rights form.

6. Defendants had an obligation to preserve the Explanation of Rights form. Defendants' obligation to preserve the Explanation of Rights form arises out of the fact that it is critical to any criminal investigation, as well as the fact that Plaintiff provided notice of his claim within approximately two (2) months of his arrest. As the Fourth Circuit has noted, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corporation*, 271 F.3d 583, 591 (4th Cir. 2001). There is no question that Defendants were aware of Plaintiff's claims even prior to the

filing of any formal litigation. Plaintiff introduced two (2) letters at trial putting Defendants on notice with respect to his claims. Indeed, these letters indicate the exact nature of Plaintiff's claims against Defendants.

7. The existence of the Explanation of Rights form and its subsequent loss or destruction is unquestionably relevant to Plaintiff's claim against Defendants. As pled in his Complaint and as Plaintiff testified at trial, the confrontation for which Plaintiff brought suit against Detective Martin and the Baltimore City Police Department occurred during the course of an interrogation and immediately after Plaintiff completely signed the Explanation of Rights form expressing his willingness to speak with Detective Martin regarding his arrest.

8. Furthermore, there is no question that the Explanation of Rights form was lost or destroyed. Plaintiff was not required to show that the loss or destruction of the Explanation of Rights form was accompanied by "bad faith" in order for an adverse inference instruction to be given. As Magistrate Judge Grimm pointed out in *Thompson*, there are three possible states of mind that satisfy the culpability component of an adverse inference jury instruction analysis: bad faith or the knowing destruction of evidence, gross negligence and ordinary negligence. *Thompson*, 219 F.R.D. at 101. It was error for the Court to conclude that an adverse inference instruction was not warranted because, in the Court's view, the evidence did no suggest that Defendants' had acted in "bad faith."

9. The evidence indicated that Defendants' loss of the Explanation of Rights form constituted (at a minimum) "ordinary negligence." As mentioned, Defendants had a duty to preserve the form. Defendants breached that duty by failing to maintain the form during the investigation and during the duration of Plaintiff's litigation. As a direct result of Defendants' breach of their duty to preserve the form, Plaintiff's case against Defendants was significantly

impaired. Had Defendants properly preserved the Explanation of Rights form for use at the trial of this matter, the document itself would have verified Plaintiff's version of the events that took place during his interrogation.

10. Defendants' negligent failure to preserve the Explanation of Rights form, particularly in light of the notice that Plaintiff had provided to Defendants, warranted a spoliation instruction as set forth in Plaintiff's Requested Instruction No. 18.

11. At a minimum, Defendant's failure to produce the Explanation of Rights form warranted a "Failure to Produce Evidence" instruction as set forth in Plaintiff's Requested Instruction No. 17. Unlike Plaintiff's "Spoliation of Evidence" instruction, which *requires* the jury to draw an adverse inference, the "Failure to Produce Evidence" instruction *permits* the jury to draw an adverse inference as to why Defendants failed to produce the Explanation of Rights form. In further contrast to Plaintiff's "Spoliation of Evidence" instruction, a "culpable" state of mind is not a component that must be satisfied before giving a "Failure to Produce Evidence" instruction. The "Failure to Produce Evidence" instruction is warranted based upon the facts and circumstances of this case because Plaintiff clearly demonstrated that the Explanation of Rights form was within Defendants' control and because it was clearly relevant to evaluating the disputed versions of what transpired in the interrogation room on the evening of March 28th/early morning of March 29th, 2002. Accordingly, the jury should have been instructed that it was permitted, but not required, to infer that the Explanation of Rights form, had it been produced, would have been unfavorable to Defendants' case.

12. The Court also erred when it denied Plaintiff's motion in limine to completely exclude all details surrounding Plaintiff's arrest and conviction. These details were not relevant to Plaintiff's claims or Defendants' defense of those claims.

13. Plaintiff asserted claims of assault, battery, and deprivation of constitutional rights pursuant to 42 U.S.C. § 1983 against Detective Martin and the Baltimore City Police Department. Plaintiff's claims arose out of an incident that took place on March 28th and March 29th 2002. Specifically, Plaintiff alleged that Detective Martin committed assault and battery against him in an interrogation room at the Southwest District office of the Baltimore City Police Department. As a result of Detective Martin's conduct and that of the other officers, Plaintiff suffered substantial damages, including, but not limited to, extreme and temporary and permanent pain and suffering, temporary and permanent and debilitating injury to his ankle, humiliation, and mental distress. As a result of Detective Martin's actions and those of the other officers, Thompson was deprived of his constitutional rights under the Fifth and Fourteenth amendments and 42 U.S.C. § 1983.

14. Significantly, the Defendants' defense in this case was that the alleged altercation between Plaintiff and Detective Martin simply never happened. The assault occurred in an interrogation room, not in the context of Plaintiff's arrest. There was no assertion that physical force was reasonable or necessary because of Plaintiff's conduct or the probable cause that the Defendants may have had to believe that Plaintiff had committed a crime.

15. The details underlying Plaintiff's March 2002 arrest simply are not relevant to Plaintiff's claims or Defendants' defenses, and thus are not admissible under the Federal Rules of Evidence. Federal Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 states that "evidence which is not relevant is not admissible." Fed. R. Evid. 402. In this case,

the details surrounding Plaintiff's arrest are irrelevant to what happened in the interrogation room and are, therefore, inadmissible under Federal Rule of Evidence Rule 402.

16. Even if the details surrounding Plaintiff's arrest had some relevance, their minimal probative value is substantially outweighed by their prejudicial effect on Plaintiff's case. Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

17. By permitting Defendants to elicit testimony regarding the underlying details of Plaintiff's arrest, Plaintiff was unfairly prejudiced in the eyes of the jury. Specifically, Defendants were permitted to elicit testimony from Detective Kahler that the Detective had observed Plaintiff drop a knife when he was pulled over in his truck on March 28, 2002. Moreover, because Defendants were permitted to cross-examine Defendant regarding some of the details surrounding his arrest, Plaintiff was required to invoke his Fifth Amendment privilege in front of the jury, which resulted in undue prejudice to Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiff, Sean Jeffrey Thompson, respectfully request that the Court set aside the judgment entered on March 18, 2005, grant Plaintiff's request for a new trial and grant such other and further relief as the Court may deem just and appropriate under the circumstances.

Dated: April 18, 2005

          /s/
Robert S. Brennen (Fed. Bar No. #04499)
Todd M. Reinecker (Fed. Bar No. #27082)
Miles & Stockbridge P.C.
10 Light Street, Suite 1200
Baltimore, Maryland 21202-1487
(410) 727-6464

Attorneys for Plaintiff,
Sean Jeffrey Thompson